UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------x

WHITSONS FOOD SERVICE (BRONX) CORP.,  :    Civil Action No. _____

                Plaintiff,  :

                          :    **COMPLAINT**

  vs.  :

                          :    **JURY TRIAL DEMANDED**

UNITHERM FOOD SYSTEMS, INC.,  :

             Defendant.  :

  :

  :

  :

---------------------------------------x

Plaintiff, Whitsons Food Service (Bronx) Corp., by its attorneys, Garfunkel Wild, P.C., for its Complaint against the Defendant, Unitherm Food Systems, Inc., alleges as follows:

## INTRODUCTION

1.    Underlying this lawsuit is an attempt by Unitherm, an Oklahoma manufacturer of commercial cooking systems, to take advantage of unforeseen circumstances that befell Whitsons, a Long Island food service provider.

2.    Put simply, and as explained in detail below, Whitsons in April 2016 agreed to purchase from Unitherm a commercial food system containing a mini spiral freezer/chiller, a mini spinal gas oven, a 24-inch flame grill, and a Grote Slitter. The total purchase price was over $1.5 million.

3.    By August 2017, Whitsons had paid over 80% of Unitherm's purchase price. Unfortunately, at that time, due to unfortunate circumstances, Whitsons plans to acquire new commercial kitchen space where the Unitherm's food system was going to be located fell through. Thus, Whitsons, through totally unforeseen circumstances, had no place to install Unitherm's food system. Accordingly, Whitsons was forced to cancel the order.

4.      Whitsons then proposed to Unitherm that Unitherm attempt to sell the food system to another buyer and refund the money paid by Whitsons. Unitherm rebuffed this proposal. Accordingly, Whitsons began searching for potential buyers of the food system, and kept Unitherm apprised of its progress.

5.      However, totally unbeknownst to Whitsons, Unitherm surreptitiously sold a significant portion of the food system – the oven, the grill, and the slitter – to an undisclosed purchaser. Making matters worse, Unitherm has refused to provide any information to Whitsons about the facts underlying the sale, has refused to provide any accounting to Whitsons as to the sales price, and has refused to refund to Whitsons any of the 80% of the purchase price it already paid Unitherm.

6.      Thus, Unitherm has taken advantage of Whitsons by pocketing Whitsons' substantial advance payments, and then reselling the equipment out from under Whitsons, and pocketing the resale money as well. This is the definition of "double-dipping."

7.      As we explain in detail below, Unitherm's actions breach its agreement with Whitsons, violate the UCC and common law, and entitle Whitsons to damages, including restitution.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332 because Whitsons and Unitherm are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Unitherm under Fed. R. Civ. P. 4 and N.Y. CPLR 301 and 302 because Unitherm transacts business within New York.

4711609v.2

10.     This Court has personal jurisdiction over Unitherm under Fed. R. Civ. P. 4 and N.Y. CPLR 301 and 302 because Unitherm contracts anywhere to supply goods or services in New York.

11.     This Court has personal jurisdiction over Unitherm under Fed. R. Civ. P. 4 and N.Y. CPLR 301 and 302 because Unitherm has committed a tortious act within New York.

12.     This Court has personal jurisdiction over Unitherm under Fed. R. Civ. P. 4 and N.Y. CPLR 301 and 302 because Unitherm has committed a tortious act without New York causing injury to person or property within New York, and regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York, or expects or should reasonably expect the act to have consequences in New York and derives substantial revenue from interstate or international commerce.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

14.     At all times relevant to this action, Plaintiff, Whitsons Food Service (Bronx) Corp., is a New York business corporation with its principal place of business located at 1800 Motor Parkway, in Islandia, New York.

15.     Upon information and belief, at all times relevant to this action, Defendant, Unitherm Food Systems, Inc., is a foreign corporation with its principal place of business located at 502 Industrial Road, in Bristow, Oklahoma.

## FACTUAL BACKGROUND

16.     Whitsons is part of the family of companies collectively trading as Whitsons Culinary Group. Founded in 1979, it produces prepared food products for institutional and retail

3

4711609v.2

customers and provides dining services to consumers and public and private organizations throughout the United States. Its services include school nutrition, residential and healthcare dining, prepared meals, corporate dining, vending services and emergency dining, ranging in scope from consulting services to complete, onsite turnkey solutions.

17.     Starting in or around 2015, Whitsons began discussing with Unitherm the possibility of acquiring food system equipment from Unitherm for use in the Prepared Meals Division of its Islandia Culinary Center.

18.     As part of these discussions, representatives of Unitherm travelled a number of times to Islandia to tour the Culinary Center, and meet with Whitsons' representatives.

19.     Ultimately, in April 2016, Whitsons agreed to purchase from Unitherm (a) a 16-inch mini spiral oven; (b) a 24-inch mini flame grill; and (c) a spiral chiller freezer.

20.     The total purchase price for Unitherm's food system equipment was $1,519,000. This included a Grote slitter, installation, commissioning, and delivery.

21.     Pursuant to the parties' agreement, the estimated delivery and installation date of the equipment in Islandia was 22 weeks from the date of the agreement.

22.     Shortly after the parties entered into their agreement, Whitsons, with Unitherm's consent, switched the prospective installation location to a new plant it was negotiating to acquire in McPherson, Kansas.

23.     Pursuant to the parties' agreement, Whitsons made the following payments to Unitherm for the equipment: (a) $531,360 on April 18, 2016; (b) $455,700 on May 27, 2016; and (c) $227,850 on August 4, 2016.

24.     Thus, after Whitsons made its August 4, 2016 payment, it had made total payments to Unitherm of $1,215,200, leaving an unpaid balance of $303,800.

4

25.     By the beginning of August 2017 – one year later – the Unitherm equipment still had not been delivered and installed.

26.     At that time, Whitsons informed Unitherm that it could not complete the purchase of the Unitherm equipment because Whitsons' deal to acquire a new plant in McPherson, Kansas – where the equipment was going to be installed – had fallen through unexpectedly.

27.     Whitsons further explained that it was impossible for it to install and operate the equipment in its Islandia facility because, as a result of recent plant redesign and renovations there, Whitsons did not have the necessary space to accommodate the equipment.

28.     In an email to Unitherm's representatives dated August 16, 2017, Whitsons explained "Knowing the quality of your product and its position in the industry, I ask for Unitherm to resell the equipment at your earliest opportunity and return our deposit, given that the purpose for which we entered into this purchase order has been utterly frustrated. I understand this is a difficult request, but I hope it can be accomplished to the satisfaction of both parties."

29.     A true and correct copy of this email is annexed as Exhibit A to this Complaint, and incorporated into this Complaint by reference.

30.     Unfortunately, Unitherm rebuffed this proposal, and refused to even acknowledge it had been made, much less agree to seek to sell the equipment.

31.     Accordingly, Whitsons began searching itself for potential buyers of the food system.

32.     Whitsons regularly kept Unitherm apprised of its progress in attempting to locate a buyer, and in fact worked with Unitherm to enable potential buyers to inspect the equipment at Unitherm's facility in Oklahoma.

4711609v.2

33.     However, totally unbeknownst to Whitsons, Unitherm recently sold a significant portion of the food system – at least the oven, the grill, and the slitter – to an undisclosed purchaser.

34.     This sale was made by Unitherm without Unitherm providing any advance notice to Whitsons.

35.     Unitherm has refused to provide any information to Whitsons about the facts underlying the sale, has refused to provide any accounting to Whitsons as to the sales price, and has refused to refund to Whitsons any of the 80% of the purchase price it already paid Unitherm.

36.     To date, Whitsons is completely in the dark as to the resale price, the resale purchaser, and whether or not the sale was done in a commercially reasonable manner.

### FIRST CAUSE OF ACTION

37.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

38.     In or around April 2016, Whitsons agreed to purchase from Unitherm a commercial food system containing a mini spiral freezer/chiller, a mini spinal gas oven, a 24-inch flame grill, and a Grote slitter. The total purchase price was $1,519,000.

39.     By August 2017, Unitherm had not yet delivered the commercial food system to Whitsons, but Whitsons had paid $1,215,200 of the system's purchase price.

40.     In or around August 2017, Whitsons was forced to cancel its order for the Unitherm commercial food system due to unforeseen circumstances, and so informed Unitherm.

41.     In good faith, Whitsons proposed to Unitherm that Unitherm re-sell the equipment and refund the purchase price already paid by Whitsons.

42.     Unitherm rebuffed this proposal, refusing to acknowledge that it had even been made.

6

4711609v.2

43.     Accordingly, Whitsons began attempting to locate potential purchasers of the equipment, and kept Unitherm informed of its progress.

44.     However, totally unbeknownst to Whitsons, Unitherm recently sold a significant portion of the food system – at least the oven, the grill, and the slitter – to an undisclosed purchaser for an undisclosed amount of money.

45.     In doing so, Unitherm breached its obligation under UCC § 2-706(3) to give Whitsons reasonable notification of its intention to resell. 12A Okla. Stat. § 2-706(3).

46.     Upon information and belief, Unitherm also breached its obligation under UCC § 2-706(2) to ensure that any re-sale is made in good faith, and that every aspect of the sale including the method, manner, time, place and terms, is commercially reasonable. 12A Okla. Stat. § 2-706(2).

47.     Under UCC § 2-706, Unitherm had an obligation to account to Whitsons regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale and Unitherm's UCC § 2-710 incidental damages. 12A Okla. Stat. §§ 2-706, 2-710.

48.     After learning of the re-sale, Whitsons demanded that Unitherm account to it regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale, and Unitherm's incidental damages.

49.     Unitherm failed and refused to do so.

50.     By reason of the foregoing, Whitsons is entitled to a judgment against Unitherm compelling it to account to Whitsons regarding the purchase price of the re-sale and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending

4711609v.2

upon the terms of the re-sale, and Unitherm's incidental damages, together with such other relief that the Court deems just, proper, and equitable.

## SECOND CAUSE OF ACTION

51.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

52.     In or around April 2016, Whitsons agreed to purchase from Unitherm a commercial food system containing a mini spiral freezer/chiller, a mini spinal gas oven, a 24-inch flame grill, and a Grote slitter. The total purchase price was $1,519,000.

53.     By August 2017, Unitherm had not yet delivered the commercial food system to Whitsons, but Whitsons had paid $1,215,200 of the system's purchase price.

54.     In or around August 2017, Whitsons was forced to cancel its order for the Unitherm commercial food system due to unforeseen circumstances, and so informed Unitherm.

55.     In good faith, Whitsons proposed to Unitherm that Unitherm re-sell the equipment and refund the purchase price paid by Whitsons.

56.     Unitherm rebuffed this proposal, refusing to acknowledge that it had even been made.

57.     Accordingly, Whitsons began attempting to locate potential purchasers of the equipment, and kept Unitherm informed of its progress.

58.     Unitherm never objected to Whitsons' efforts to locate potential purchasers of the equipment, and, in reliance on Unitherm's tacit acceptance of this course of action, Whitsons expended extensive time, money, and other effort to locate and negotiate with potential purchasers of the equipment.

8

59.     However, totally unbeknownst to Whitsons, Unitherm recently sold a significant portion of the food system – at least the oven, the grill, and the slitter – to an undisclosed purchaser for an undisclosed amount of money.

60.     In doing so, Unitherm breached its obligation under UCC § 2-706(3) to give Whitsons reasonable notification of its intention to resell. 12A Okla. Stat. § 2-706(3).

61.     Upon information and belief, Unitherm also breached its obligation under UCC § 2-706(2) to ensure that any re-sale is made in good faith, and that every aspect of the sale including the method, manner, time, place and terms is commercially reasonable. 12A Okla. Stat. § 2-706(2).

62.     Unitherm breached its obligation under UCC § 2-706 to account to Whitsons regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale and Unitherm's UCC § 2-710 incidental damages. 12A Okla. Stat. §§ 2-706, 2-710.

63.     The above breaches of the UCC also constitute breaches of the terms of the purchase agreement between Whitsons and Unitherm.

64.     As a result of these breaches, Whitsons suffered damages.

65.     By reason of the foregoing, Whitsons is entitled to a judgment awarding Whitsons compensatory damages in an amount exceeding $1,500,000, together with interest, costs, disbursements, and other allowances.

## THIRD CAUSE OF ACTION

66.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

4711609v.2

67.     In or around April 2016, Whitsons agreed to purchase from Unitherm a commercial food system containing a mini spiral freezer/chiller, a mini spinal gas oven, a 24-inch flame grill, and a Grote slitter. The total purchase price was $1,519,000.

68.     By August 2017, Unitherm had not yet delivered the commercial food system to Whitsons, but Whitsons had paid $1,215,200 of the system's purchase price.

69.     In or around August 2017, Whitsons was forced to cancel its order for the Unitherm commercial food system due to unforeseen circumstances, and so informed Unitherm.

70.     In good faith, Whitsons proposed to Unitherm that Unitherm re-sell the equipment.

71.     Unitherm rebuffed this proposal, refusing to acknowledge that it had even been made.

72.     Accordingly, Whitsons began attempting to locate potential purchasers of the equipment, and kept Unitherm informed of its progress.

73.     However, totally unbeknownst to Whitsons, Unitherm recently sold a significant portion of the food system – at least the oven, the grill, and the slitter – to an undisclosed purchaser for an undisclosed amount of money.

74.     Under UCC § 2-706, Unitherm had an obligation to account to Whitsons regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale and Unitherm's UCC § 2-710 incidental damages. 12A Okla. Stat. §§ 2-706, 2-710.

75.     After learning of the re-sale, Whitsons demanded that Unitherm account to it regarding the purchase price and return all, or at least an equitable portion, of the advance

10

payments made by Whitsons to Unitherm, depending upon the terms of the re-sale, and Unitherm's incidental damages.

76.    Unitherm has failed and refused to return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm.

77.    By reason of the foregoing, Whitsons is entitled to a judgment awarding it restitution of all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm under UCC § 2-718(2), together with interest, costs, disbursements, and other allowances. 12A Okla. Stat. § 2-718(2).

## FOURTH CAUSE OF ACTION

78.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

79.    In or around April 2016, Whitsons agreed to purchase from Unitherm a commercial food system containing a mini spiral freezer/chiller, a mini spinal gas oven, a 24-inch flame grill, and a Grote slitter. The total purchase price was $1,519,000.

80.    By August 2017, Unitherm had not yet delivered the commercial food system to Whitsons, but Whitsons had paid $1,215,200 of the system's purchase price.

81.    In or around August 2017, Whitsons was forced to cancel its order for the Unitherm commercial food system due to unforeseen circumstances, and so informed Unitherm.

82.    In good faith, Whitsons proposed to Unitherm that Unitherm re-sell the equipment.

83.    Unitherm rebuffed this proposal, refusing to acknowledge that it had even been made.

84.    Accordingly, Whitsons began attempting to locate potential purchasers of the equipment, and kept Unitherm informed of its progress.

11

4711609v.2

85.     However, totally unbeknownst to Whitsons, Unitherm recently sold a significant portion of the food system – at least the oven, the grill, and the slitter – to an undisclosed purchaser for an undisclosed amount of money.

86.     Under UCC § 2-706, Unitherm had an obligation to account to Whitsons regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale and Unitherm's UCC § 2-710 incidental damages. 12A Okla. Stat. §§ 2-706, 2-710.

87.     After learning of the re-sale, Whitsons demanded that Unitherm account to it regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale, and Unitherm's incidental damages.

88.     Unitherm has failed and refused to return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm.

89.     By reason of the foregoing, Whitsons is entitled to a judgment awarding all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm as money had and received, together with interest, costs, disbursements, and other allowances.

## FIFTH CAUSE OF ACTION

90.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

91.     In or around April 2016, Whitsons agreed to purchase from Unitherm a commercial food system containing a mini spiral freezer/chiller, a mini spinal gas oven, a 24-inch flame grill, and a Grote slitter. The total purchase price was $1,519,000.

92.     By August 2017, Unitherm had not yet delivered the commercial food system to Whitsons, but Whitsons had paid $1,215,200 of the system's purchase price.

12

93.     In or around August 2017, Whitsons was forced to cancel its order for the Unitherm commercial food system due to unforeseen circumstances, and so informed Unitherm.

94.     In good faith, Whitsons proposed to Unitherm that Unitherm re-sell the equipment.

95.     Unitherm rebuffed this proposal, refusing to acknowledge that it had even been made.

96.     Accordingly, Whitsons began attempting to locate potential purchasers of the equipment, and kept Unitherm informed of its progress.

97.     However, totally unbeknownst to Whitsons, Unitherm recently sold a significant portion of the food system – at least the oven, the grill, and the slitter – to an undisclosed purchaser for an undisclosed amount of money.

98.     Under UCC § 2-706, Unitherm had an obligation to account to Whitsons regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale and Unitherm's UCC § 2-710 incidental damages. 12A Okla. Stat. §§ 2-706, 2-710.

99.     After learning of the re-sale, Whitsons demanded that Unitherm account to it regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale, and Unitherm's incidental damages.

100.    Unitherm has failed and refused to return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm.

101.    By reason of the foregoing, it would be inequitable and unjust for Unitherm to be enriched by retaining all, or a portion, of the advance payments made by Whitsons to Unitherm.

4711609v.2

102.    By reason of the foregoing, Whitsons is entitled to a judgment awarding all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, together with interest, costs, disbursements, and other allowances.

### SIXTH CAUSE OF ACTION

103.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

104.    In or around April 2016, Whitsons agreed to purchase from Unitherm a commercial food system containing a mini spiral freezer/chiller, a mini spinal gas oven, a 24-inch flame grill, and a Grote slitter. The total purchase price was $1,519,000.

105.    By August 2017, Unitherm had not yet delivered the commercial food system to Whitsons, but Whitsons had paid $1,215,200 of the system's purchase price.

106.    In or around August 2017, Whitsons was forced to cancel its order for the Unitherm commercial food system due to unforeseen circumstances, and so informed Unitherm.

107.    In good faith, Whitsons proposed to Unitherm that Unitherm re-sell the equipment.

108.    Unitherm rebuffed this proposal, refusing to acknowledge that it had even been made.

109.    Accordingly, Whitsons began attempting to locate potential purchasers of the equipment, and kept Unitherm informed of its progress.

110.    However, totally unbeknownst to Whitsons, Unitherm recently sold a significant portion of the food system – at least the oven, the grill, and the slitter – to an undisclosed purchaser for an undisclosed amount of money.

111.    In doing so, Unitherm breached its obligation under UCC § 2-706(3) to give Whitsons reasonable notification of its intention to resell. 12A Okla. Stat. § 2-706(3).

112.    Upon information and belief, Unitherm also breached its obligation under UCC §
2-706(2) to ensure that any re-sale is made in good faith, and that every aspect of the sale
including the method, manner, time, place and terms is commercially reasonable. 12A Okla. Stat.
§ 2-706(2).

113.    Under UCC § 2-706, Unitherm had an obligation to account to Whitsons
regarding the purchase price and return all, or at least an equitable portion, of the advance
payments made by Whitsons to Unitherm, depending upon the terms of the re-sale and
Unitherm's UCC § 2-710 incidental damages. 12A Okla. Stat. §§ 2-706, 2-710.

114.    After learning of the re-sale, Whitsons demanded that Unitherm account to it
regarding the purchase price and return all, or at least an equitable portion, of the advance
payments made by Whitsons to Unitherm, depending upon the terms of the re-sale, and
Unitherm's incidental damages.

115.    Unitherm failed and refused to do so.

116.    Upon information and belief, Unitherm is actively attempting to re-sell the
remaining equipment purchased by Whitsons under the same terms and conditions as the
equipment already sold, and is thereby again intending to violate various provisions of UCC § 2-
706.

117.    Thus, an actual controversy exists currently between Whitsons and Unitherm
regarding the legality and propriety of its plans to sell the remaining equipment.

118.    By reason of the foregoing, Whitsons is entitled to a judgment declaring that (a)
any future re-sale of the remaining equipment at issue in this lawsuit must be made upon due
notice to Whitsons, and in good faith and upon commercially reasonable terms; and (b) Unitherm
is obligated to account to Whitsons regarding the purchase price and return all, or at least an

4711609v.2

equitable portion, of the advance payments made by Whitsons to Unitherm regarding this remaining equipment, depending upon the terms of the re-sale, and Unitherm's incidental damages, and such other and further relief that the Court deems just, proper, and equitable.

**WHEREFORE**, the Plaintiff, Whitsons Food Service (Bronx) Corp., demands judgment against the Defendant, Unitherm Food Systems, Inc., as follows:

(i)     on the First Cause of Action compelling Unitherm to account to it regarding the purchase price of the re-sale and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, depending upon the terms of the re-sale, and Unitherm's incidental damages, together with such other relief that the Court deems just, proper, and equitable;

(ii)     on the Second Cause of Action, awarding Whitsons compensatory damages in an amount exceeding $1,500,000, together with interest, costs, disbursements, and other allowances;

(iii)     on the Third Cause of Action, awarding Whitsons restitution of all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm under UCC § 2-718(2), together with interest, costs, disbursements, and other allowances;

(iv)     on the Fourth Cause of Action, awarding Whitsons all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm as money had and received, together with interest, costs, disbursements, and other allowances;

(v)     on the Fifth Cause of Action, awarding Whitsons all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm, together with interest, costs, disbursements, and other allowances;

(vi)     on the Sixth Cause of Action, declaring that declaring that (a) any future re-sale of the remaining equipment at issue in this lawsuit must be made upon due notice to Whitsons, and

4711609v.2

in good faith and upon commercially reasonable terms; and (b) Unitherm is obligated to account to Whitsons regarding the purchase price and return all, or at least an equitable portion, of the advance payments made by Whitsons to Unitherm regarding this remaining equipment, depending upon the terms of the re-sale, and Unitherm's incidental damages, and such other and further relief that the Court deems just, proper, and equitable; and

    (vii)    such other and further relief as this Court may deem just and proper.

Dated: Great Neck, New York
        December 22, 2017

GARFUNKEL WILD, P.C.
*Attorneys for Plaintiff*

By:_____
      Roy W. Breitenbach
      111 Great Neck Road
      Great Neck, New York 11021
      (516) 393-2200

TO:    UNITHERM FOOD SYSTEMS, INC.
       502 Industrial Road
       Bristow, Oklahoma 74010

4711609v.2